# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| QUESTAR PIPELINE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>94.86 ACRES OF LAND, et al.,<br><br>Defendants. | ORDER<br>and<br>MEMORANDUM DECISION<br><br><br>Case No. 2:05-CV-306-TC |

## INTRODUCTION

This is a condemnation action in which Questar Pipeline (Questar) condemned a fifty-foot wide easement across property owned by Amerex Land Company (Amerex). Questar has moved in limine to exclude at trial Amerex's report and expert opinion testimony regarding the frustration of the owner's plans because this evidence is based on a theory of damages—lost profits resulting from frustration of Amerex's plans to develop two subdivisions on its property—that is not compensable under condemnation law.

## BACKGROUND

Questar condemned, under the Natural Gas Act 15 U.S.C. § 717f, a permanent and temporary easement across Amerex's property for the construction and operation of a natural gas pipeline. Amerex's property is located in Price, Utah, and consists of 251.24 acres. The land is currently vacant. Questar's easement is fifty feet wide, 3725.8 feet in length across the property, and consists of 4.277 acres.

Amerex has submitted a "Consultation Report" (Report) titled, "The Impact to the Development Plans for the Amerex Property Created by a Partial Acquisition for an Underground Pipeline."[1] The Report was prepared by Blaine Hales and Aaron Henderson, who work for The Appraisers, Inc. The purpose of the Report was to "analyze the effect Questar's new, large-capacity natural gas pipeline has on the property owner's future plans for a multi-phase subdivision." (Pl.'s Mem. Supp., Ex. C at 9.) Specifically, the Report focuses on the "financial impact that the acquisition would have on [Amerex's] development plans." (Id.)

The Report details Amerex's development plans for two residential subdivisions on its property, Desert Hills and Hidden Hollow. Desert Hills has limited buildable area and limited potential profits. But the main motivation for developing Desert Hills is to offset the cost of extending utilities to service Hidden Hollow, the primary subdivision. The Report estimates a cost of $262,792 to extend utilities to Hidden Hollow.

Despite the Report's discussion of Amerex's development plans, neither the Desert Hills subdivision nor the Hidden Hollow subdivision has ever been recorded. In 1982, a concept plan was prepared for a forty nine-lot Hidden Hollow subdivision. But no application for subdivision approval was ever made. In April 2005, the same time that Questar filed its notice of condemnation action, Amerex received preliminary approval for a six-lot Desert Hills subdivision. Amerex did not file for final approval, and the preliminary approval lapsed after one year, in April 2006. According to Amerex, development of the property had been in active process for many months before the condemnation suit was filed. But because of the

---

[1] A separate appraisal prepared by The Appraisers, Inc. was also submitted but is not the subject of this motion in limine.

uncertainties caused by this suit and the change in market conditions in the Price area, development has been suspended for the time being.

After detailing Amerex's development plans, the Report goes on to calculate the impact that the pipeline would have on these plans. The Report does not include an appraisal of the fair market value of the property before and after the taking. Rather, the Report compares the net cost of extending utilities without the pipeline easement and the net cost of extending utilities with the pipeline easement. The net cost is calculated based on the expected cash flow from a ten-lot Desert Hills subdivision,[2] less the reduction in land ownership (the value of acreage sold as lots). Comparing the net cost of extending utilities with and without the pipeline easement, the Report concludes that the loss to Amerex caused by the easement would be $161,340.

Questar has moved to exclude the Report and expert testimony based on the Report because the calculation of damages in the Report is based on the frustration of Amerex's development plans and not the difference in the fair market value of the land before and after the taking.

## ANALYSIS

When a natural gas company condemns property under the Natural Gas Act, the "practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h).

---

[2] The preliminary subdivision approval for Desert Hills was only for six lots, not ten. There is no evidence that a ten-lot Desert Hills subdivision was contemplated, is feasible, or would be approved.

Whether federal or Utah condemnation law applies in this case does not affect the outcome; "[t]he analysis under the Fifth Amendment is virtually identical" to the analysis under the Utah Constitution. Smith v. Price Dev. Co., 2005 UT 87, ¶ 12, 125 P.3d 945.

Just compensation in a condemnation case is measured by the fair market value of the property. Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 9-10 (1984). Fair market value is "what a willing buyer would pay in cash to a willing seller at the time of the taking." Id. (citations omitted); see also S. Pac. Co. v. Hunter, 352 P.2d 693, 695 (Utah 1960) (Just compensation "in the ordinary case is the market value of the property taken, that is what a willing buyer would pay to a willing seller."). In a partial taking case, just compensation is measured by the difference in the fair market value of the whole property before the taking and the fair market value of the remaining property after the taking. United States v. Virginia Elec. & Power Co., 365 U.S. 624, 632 (1961); City of Hildale v. Cooke, 2001 UT 56, ¶ 20, 28 P.3d 697 (In a partial taking case, compensation is based on "the difference in market value of the property before and after the taking.").

Compensation does not include consequential damages, such as lost profits, lost development opportunities, or frustration of plans. United States v. General Motors Corp., 323 U.S. 373, 379-80 (1945); State v. Noble, 305 P.2d 495, 498 (Utah 1957) ("A condemnee is not entitled to realize a profit on his property. It must go to the condemnor for its fair market value, as is, irrespective of any claimed value based on an aggregate of values of individual lots in a subdivision which one hopes to sell at a future time to individuals rather than to an individual. The test is not what the lots will bring when and if 62 willing buyers come along, but what the tract, as a unit, and as is, platted or not, and in whatever state of completion, will bring from a

willing buyer of the whole tract." (quoting State v. Tedesco, 291 P.2d 1028, 1029 (Utah 1956))). And fair market value "does not include the special value of property to the owner arising from its adaptability to his particular use." United States v. 564.54 Acres of Land, 441 U.S. 506, 511 (1979).

Here, the Report focuses entirely on the effect that Questar's pipeline has on Amerex's proposed subdivision developments. In arriving at the conclusion that the pipeline would cause a loss of $161,340 for Amerex, the Report compared the likely net cost of extending utilities to the Hidden Hollow subdivision without the pipeline and with the pipeline. The net costs are based on the likely revenue from selling the ten lots proposed for the Desert Hills subdivision. These calculations do not reflect the change in market value of the land with and without the pipeline, but rather the change of cost for Amerex's proposed subdivisions.

Although courts do not require one particular valuation method, fair market value cannot be based on the "aggregate of values of individual lots in a subdivision which one hopes to sell at a future time to individuals." Nobel, 305 P.2d at 498 (emphasis omitted). Nor does it include "the special value of property to the owner arising from its adaptability to his particular use." 564.54 Acres of Land, 441 U.S. at 511. This is what the Report contains—the special value of the property to Amerex based on its adaptability to Amerex's proposed two-phase subdivision, as measured by the aggregate value of individual lots. Because that "special value" is not included in the fair market value of the land, the Report and testimony based on the Report are not admissible as evidence of just compensation.

## CONCLUSION

For the reasons stated above, the court GRANTS Questar's motion in limine (Dkt. No.

33) to exclude Amerex's Report and expert opinion testimony based on the Report.

SO ORDERED this 14th day of March, 2011.

                                                BY THE COURT:

                                                _____
                                                TENA CAMPBELL
                                                United States District Judge